IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAGGIEMOO'S INTERNATIONAL, LLC :
                                :
v.                              :  Civil No. WMN-05-677
                                :
SPRINKLES & SCOOPS, LLC         :
et al.                          :

**MEMORANDUM**

Before the Court are the cross motions for summary judgment filed by Plaintiff MaggieMoo's International, LLC (MMI), Paper No. 11, and Defendants Sprinkles & Scoops, LLC (S&S), Timothy Stevens, and Michael Fitzpatrick, Paper No. 14. The motions are fully briefed and ripe for decision. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be granted in part and denied in part and that Defendants' motion will be denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

The gravamen of these cross motions is the validity of various releases signed by the parties. Plaintiff MMI is the franchisor of MaggieMoo's ice cream stores; it entered a 10-year Development Agreement with franchisee Defendant S&S in September 2002 to allow S&S to open numerous MaggieMoo's stores. On June 15, 2004, the parties also executed a

Franchise Agreement for a store Defendants[1] had previously opened in April 2003 in Englewood, New Jersey.  Under the terms of the Development Agreement, at §§ 7.2-7.3, and the Franchise Agreement, at §§ 14.3-14.4, Plaintiff has the discretion to require Defendants to release all legal claims against it as a condition of any transfer of Defendants' rights or material assets.

Defendants did not prosper under their contractual relationship with Plaintiff and their contracts were modified numerous times.  In December 2003, Defendants S&S and Stevens amended the Development Agreement to reduce their geographic area of responsibility.  On June 21, 2004, Defendants S&S and Stevens transferred their rights under the Development Agreement to a third party.  In December 2004, all Defendants transferred the Englewood store's physical assets, along with the lease to that store's premises, to a franchisee of Plaintiff's main competitor.[2]  The terms of the December 2004

---

[1]  Defendants Stevens and Fitzpatrick are the individual guarantors of the June 15, 2004, Franchise Agreement and, by that date, were the principals of Defendant S&S.  The record does not reveal when Stevens transferred one-third of his once plenary interest in S&S to Fitzpatrick.

[2]  The store had closed approximately one month earlier.

agreement[3] effectively ended the relationship between the parties.

The parties took steps to avoid future litigation or acrimony.  With each transaction, they executed mutual releases of all legal claims arising out of the relevant prior agreements.  The December 2004 agreement also contains, at ¶ 7.B, an non-disparagement clause under which all Defendants expressly agree not to make any derogatory statements about Plaintiff.

Despite the releases, litigation erupted in 2005.  In March 2005, Defendants' new counsel, on behalf of Defendant S&S and pursuant to the mediation clauses in the Development and Franchise Agreements, sent Plaintiff a mediation demand letter.  In that letter, counsel explained Defendant S&S's position that each of the formal releases it signed was invalid under controlling Maryland law.  Within days, Plaintiff filed this suit seeking (1) a declaratory judgment that the releases bar Defendants from bringing any relevant claim existing at the time of the final release and (2) breach of contract damages (attorney's fees) pursuant to the express terms of the December 2004 release.  Defendants filed a

---

[3]  The full title of the December 10, 2004, agreement is the "Transfer, Termination and Release Agreement."

counterclaim seeking a declaratory judgment that the anti-disparagement clause is invalid with respect to past and future statements made by Defendants in support of Defendant S&S's potential Maryland statutory claim against Plaintiff.

## II.  LEGAL STANDARD

A moving party is entitled to summary judgment only upon showing that there exists no genuine issue as to any material fact, and it is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Blue Ridge Ins. Co. v. Puig, 64 F. Supp. 2d 514 (D. Md. 1999) (citing, inter alia, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"Where . . . both parties have moved for summary judgment, it does not establish that there is no issue of fact and require that summary judgment be granted to one side or another." World-Wide Rights Ltd. P'ship v. Combe, Inc., 955 F.2d 242, 244 (4th Cir. 1992) (citation and internal quotation marks omitted).  When both parties file motions for summary judgment, the court applies the same standards of review. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment--even where . . . both parties have filed cross

4

motions for summary judgment.") (emphasis omitted).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720).

## III.  DISCUSSION

### A.  Validity of the release of claims

Because the express terms of each unambiguous release executed by Defendants would bar the claims raised in the mediation letter, Defendants must show that every release is void as contrary to the public policy of Maryland, as codified by the Maryland legislature in the Maryland Franchise Registration and Disclosure Law (MFRDL), MD. CODE ANN. BUS. REG. §§ 14-201-233 (West 2004).[4]  If any of the three releases is valid, Defendants' potential claims arising out of pre-release events would be barred.

The Court's inquiry properly begins with the statute

---

[4]  Defendants affirm that they are not seeking to void the releases under the narrow doctrine of duress or coercion and have advanced no other legal theory beside public policy. This case, therefore, squarely presents a question of statutory construction.

itself.  The MFRDL states, "[a]s a condition of the sale of a franchise, a franchisor may not require a prospective franchisee to agree to a release, assignment, novation, waiver, or estoppel that would relieve a person from liability under this subtitle."  Id. § 14-226 (the anti-waiver provision).  By its express terms, the statutory provision only addresses the "sale of a franchise."

Because the legislature authorizes the Securities Commissioner in the Office of the Maryland Attorney General to "adopt and enforce regulations to administer" the laws regulating franchises, id. § 14-206, this Court also looks to these regulations for guidance when determining this subtitle's statutory meaning.  The pertinent regulations state that it is unlawful to require a franchisee to "[p]rovide a release from liability under the provisions of the Maryland Franchise Law as part of a franchise agreement or as a condition of the sale, renewal or assignment of a franchise." MD. REGS. CODE tit. 02 § 02.08.16.L.(1) (2004) (the prohibited releases regulation).  Again, the regulatory language is limited to "the sale, renewal or assignment of a franchise."

The release in the December 2004 agreement does not run afoul of the MFRDL's anti-waiver provision or the authorized agency's prohibited releases regulation because there was

6

simply no sale or transfer of a franchise in that agreement.
The December 2004 agreement merely involved the transfer of
the Englewood store's physical assets and lease rights to a
franchisee of the Cold Stone Creamery.  Defendants themselves
unequivocally state that the agreement did not include the
sale or transfer of a MaggieMoo's franchise.  Defs.' Reply at
5 ("[S&S] only transferred the assets of the Store after it
made extensive efforts to transfer and assign the Store as a
MaggieMoo's [but found that no] other party would take
assignment of the Store as MaggieMoo's.")

   With no violation of the statute enacted by the Maryland
Legislature or of the regulations issued by the Attorney
General of Maryland, this Court has no sound public policy
basis for voiding the release in the December 2004 agreement,
which Defendants negotiated for consideration and with the
assistance of counsel.[5]  See Maryland-National Capital Park
and Planning Comm'n v. Washington Nat. Arena, 386 A.2d 1216,
1228 (Md. 1978) (stating "Maryland courts have been hesitant
to strike down voluntary bargains on public policy grounds,
doing so only in those cases where the challenged agreement is

---

   [5]  Defendants do not dispute Plaintiff's assertion that
they were represented by their former counsel, Jeremy I.
Silberman, during the negotiations that produced the December
2004 release.

patently offensive to the public good, that is, where 'the common sense of the entire community would . . . pronounce it' invalid") (citation omitted).  While true that Defendants were still obligated to obtain Plaintiff's consent to the sale of its assets and lease rights under the terms of the Franchise Agreement, it does not follow that such a sale can be reasonably construed as either the "sale of a franchise" under the statute or as "the sale, renewal or assignment of a franchise" under the regulations.[6]

Defendants muddle the relevant inquiry by asserting that because (1) Plaintiff includes the transfer of assets among those franchisee actions that require Plaintiff's approval,[7]

---

[6]  With their cross motion, Defendants submit the sworn declaration of the Assistant Attorney General in the Office of Attorney General of Maryland, Division of Securities, Dale E. Cantone.  His declaration is offered "in support of Defendants' Motion for Summary Judgment" with the caveat that the "Securities Division takes no position on the merits" of the underlying claims.  While the statement offers some elaboration on Cantone's understanding of the meaning of the MFRDL's anti-waiver provision and regulations enforcing it, it does not suggest that the scope of the provision exceeds transfers and assignments of franchises.  Nothing in the Cantone declaration contradicts the Court's conclusion that the December 2004 agreement is not covered by the anti-waiver provision because that agreement merely transferred a store's physical assets and property lease and not a franchise.  The Court therefore sees no reason to address the parties' substantial arguments contesting the appropriate weight a court should give this type of statement.

[7]  Section 14.3.1 of the Franchise Agreement states: Franchisee shall not, without the prior written

then (2) Defendants' sale of its assets and store lease must be an "assignment of a franchise" under Maryland law.[8]  The latter proposition does not logically flow from the former. The Court looks to the MFRDL and authorized regulations to determine the scope of the anti-waiver provision.  It does not consider the Franchise Agreement's laundry list of franchisee actions that require franchisor's prior written approval to be probative of the statute's scope or the intent of the Maryland legislature.

Defendants' arguments regarding the overlapping meanings of the words transfer and assignment are similarly irrelevant. Even if the court were to assume that the words were perfectly synonymous, that would not convert the December 2004 transfer of the store's physical assets and lease, which is not subject to the MFRDL's anti-waiver provision, into an assignment of a franchise, which could be.

B.  Validity of the non-disparagement clause

Defendants ask the Court to issue an order that Plaintiff

───────────────

consent of Franchisor, transfer, pledge, or otherwise encumber: (a) the rights and obligations of the Franchisee under this Agreement; or (b) any material asset of Franchisee or the Store . . . ."

[8] See Defs.' Reply at 6 (stating it is "absurd [for the Court] to penalize [Defendant S&S] by using a definition that [sic] 'assignment' that is more narrow than that used by MMI in contracts it requires franchisees to sign").

may not use any statement Defendants might make in support of
a potential claim brought under the MFRDL as a basis for any
claim against Defendants for breaching the non-disparagement
clause of the December 2004 agreement.  Because the Court
rules that Defendants' potential claims are barred by the
release, it need not reach the question of whether bringing
suit might violate other provisions of the agreement.

    C.  Attorney's fees

    Plaintiff seeks damages for attorney's fees and
associated costs incurred as a result of Defendant S&S's
mediation letter.  The December 2004 agreement provides that
"[i]f any party to this Agreement violates any of its terms,
said party shall be liable for all costs, including but not
limited to attorneys' fees, incurred by the other party to
this Agreement in enforcing its rights hereunder."

    In authorizing counsel to send the mediation demand
letter, Defendant S&S clearly violated the express terms of
the valid release.  Defendants argue that their good faith
belief in the invalidity of the release should insulate them
from having to pay Plaintiff's attorney's fees.  Defendants
add the specious assertion that a valid release is not a
covenant not to sue and argue that the significance of their
argument against the release makes their liability for

Plaintiff's attorney's fees an inappropriate "sanction."
Defs.' Opp. at 2 ¶ 3.  An award of attorney's fees, however,
is not a sanction where it simply fulfills the express
contractual terms previously negotiated and accepted by the
parties.  Because the December 2004 release is valid, the
Court will not change the terms of the contract to relieve
Defendants of their obligations under it.[9]

**IV.  CONCLUSION**

For these reasons, Plaintiff's motion for summary
judgment will be granted in part and denied in part as
explained in the accompanying Order and Defendants motion for
summary judgment will be denied.  A separate order consistent
with the reasoning of this Memorandum will follow.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: August 16, 2005

---

[9]  In finding that the December 2004 agreement is valid,
the Court declines Plaintiff's invitation to re-state its
essential terms in the form of a declaratory judgment.  The
agreement is what it is; the parties can look to it to
understand their rights and obligations to each other.